**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile:  (619) 297-1022

*Attorneys for Plaintiff,*
Rafael David Sherman

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL DAVID SHERMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**KAISER FOUNDATION HEALTH PLAN, INC.**, a/k/a **KAISER PERMANENTE**,<br><br>Defendant. | **Case No.:** 3:13-cv-00981-JAH-JMA<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR A CY PRES DISTRIBUTION FROM THE RESIDUAL SETTLEMENT FUND**<br><br>**Date**:  June 5, 2017<br>**Time**:  2:30 p.m.<br>**Ctrm**:  13B<br>**Judge**:  Hon. John A. Houston<br><br>[Filed concurrently with Declaration of Abbas Kazerounian; Declaration of Jonathan D. Carameros] |

## I. INTRODUCTION

Plaintiff RAFAEL DAVID SHERMAN ("Plaintiff") moves the Court to issue a *cy pres* distribution of unclaimed funds remaining after the initial distribution to Class Members. The Court approved the terms of the settlement agreement in its Final Order Approving Class Action Settlement ("Final Order"). Dkt. No. 58. Pursuant to the terms of the settlement agreement ("Settlement Agreement," Dkt. No. 35-3) and the Court's Final Order, each claimant was issued a settlement check. However, since not all settlement checks were cashed, a balance of $239,331.90 remains in the settlement fund. Accordingly, Plaintiff proposes a *cy pres* distribution.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2013, Plaintiff filed this action against defendant KAISER FOUNDATION HEALTH PLAN, INC. ("Defendant") for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"). Dkt. No. 1. Plaintiff alleged on behalf of himself and a putative class that Defendant sent automated text messages to non-customers' cellular telephones using an automated telephone dialing system for non-emergency purposes or without prior express consent. Dkt. No. 1, ¶¶ 12-35. On June 27, 2013, Defendant filed an Answer. Dkt. No. 7.

On December 4, 2014, the Court preliminarily approved the parties' class action Settlement Agreement. Dkt. No. 38.

On May 12, 2015, the Court issued its Final Order Approving Class Action Settlement. Dkt. No. 58.

Pursuant to this Court's Final Order Approving Class Action Settlement, the claims administrator, Kurtzman Carson Consultants ("KCC"), issued each of the 79,312 claimants a settlement check in the amount of $39.68. Declaration of Jonathan D. Carameros ("Carameros Decl."), ¶¶ 3-4, filed herewith. Of the 79,312 checks issued for each claimant, 73,291 checks were cashed, meaning that 6,021

checks were not cashed, leaving a remainder of $239,331.90 (including $21.82 of unused settlement funding due to rounding) in the settlement fund. *Id*. at ¶¶ 4-5.

### III. THE COURT SHOULD ISSUE A *CY PRES* DISTRIBUTION FROM THE REMAINDER OF THE SETTLEMENT FUND

The Court retains its traditional equitable powers in determining the method in which to distribute settlement funds. *Powell v. Georgia-Pacific Corp.*, 843 F. Supp. 491, 495 (W.D. Ark. January 31, 1995); *see also Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *In re Agent Orange Product Liability Litigation*, 611 F. Supp. 1396, 1402 (E.D. N.Y. 1985). As such, Plaintiff requests that this Court order a *cy pres* distribution.

#### A. *CY PRES* DISTRIBUTION OF UNCASHED CHECKS

Section 14.3 of the Settlement Agreement reads:

> [a]ny funds from uncashed settlement checks, as well as any funds from settlement checks to Class Members whose valid address could not be located pursuant to Section 7.1.2[1] above, shall be delivered to a cy pres recipient by the parties and approved by the Court.

Having made every reasonable effort to ensure that settlement funds were distributed to the Class Members, and consistent with the terms of the approved Settlement Agreement, Plaintiff now requests that the remaining unclaimed funds be provided in equal shares to the proposed *cy pres* recipients:

1) New Media Rights, founded in 2006, which is a program of California Western School of Law that offers pro bono preventative privacy related legal services for consumers, nonprofits, technology entrepreneurs, and creators across the United States;

2) Electronic Frontier Foundation, founded in 1990, which is an international non-profit digital rights group;

---

[1] The section that should have been referenced is § 8.1.2. of the Settlement Agreement.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

PL.'S MTN. FOR A CY PRES DISTRIBUTION
CASE NO.: 3:13-CV-00981-JAH-JMA

3

3) the Consumer Federation of California, founded in 1960, which is a nonprofit advocacy organization that campaigns for state and federal laws that place consumer protection ahead of corporate profit; and

4) Public Justice, founded in 1982, which has litigated cases in state and federal courts throughout the country, including a broad range of individual cases and class actions, involving consumers who were victimized by predatory companies.

The doctrine of *cy pres* allows a court to distribute unclaimed portions of a class action settlement fund to the "next best" class of beneficiaries. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir. 1990). The Ninth Circuit directs courts to consider the following factors in determining whether awards to the proposed *cy pres* beneficiary, or beneficiaries, are appropriate: (1) the nature of the plaintiff's lawsuit; (2) the objectives of the underlying statutes; and (3) the interests of the silent class members, including their geographic diversity. *Nachshin v. AOL, LLC* 663 F.3d 1034, 1040 (9th Cir. 2011).

### B. GUIDANCE FROM PAST CASES

While the Court has discretion in determining the above factors, a review of relevant Ninth Circuit precedent reveals when *cy pres* recipients fail to satisfy those standards.

#### 1. Six Mexican Workers

In *Six Mexican Workers v. Arizona Citrus Growers*, a class of undocumented Mexican farm workers sued various companies for violations of the Farm Labor Contractor Registration Act. *Six Mexican Workers,* 904 F.2d at 1303. The district court found the defendants liable for $1.8 million in statutory damages, which the Ninth Circuit later reduced to $850,000. *Id.* at 1303–04, 1310. The district court also identified the Inter-American Fund, which provided humanitarian aid in Mexico, as the *cy pres* recipient of any unclaimed funds. *Id.* at 1304.

On review, the Ninth Circuit held that the *cy pres* distribution was not appropriate because there was "no reasonable certainty" that any class member would benefit from it, even though the money would go "to areas where the class members may live." *Id.* at 1308. The Ninth Circuit Court also recognized the lack of relation between the choice of charity and the class claims. In its analysis, the Court reasoned that while the purpose of the statute was to compensate victims of unscrupulous employers and to deter future violations, the Inter-American Fund was "not an organization with a substantial record of service nor [was] it limited in its choice of projects," and any distribution would therefore have required court supervision "to ensure that the funds [were] distributed in accordance with the goals of the remedy." *Id.* at 1309. Ultimately, the Court reversed the *cy pres* distribution because "the district court's application [of the cy pres doctrine] was inadequate to serve the goals of the statute and protect the interests of the silent class members." *Id.* at 1312.

### 2. <u>Nachshin</u>

The Ninth Circuit came to a similar conclusion in *Nachshin v. AOL, LLC*, 663 F.3d 1034, (9th Cir. 2011). In that case, AOL was accused of violating a number of statutes, including California's Unfair Competition Law and Consumers Legal Remedies Act, by wrongfully inserting commercial footers to the plaintiffs' outgoing emails. *Nachshin*, 663 F.3d at 1036. Realizing that the damages would be small and distribution to the class expensive, AOL agreed to make substantial donations to three charities: the Legal Aid Foundation of Los Angeles, the Federal Judicial Center Foundation, and the Los Angeles and Santa Monica chapters of the Boys and Girls Club of America. *Id.* at 1037.

The *Nachshin* Court held that the *cy pres* distribution "fail[ed] to target the plaintiff class, because it d[id] not account for the broad geographic distribution of the class." *Id.* at 1040. The class included over 66 million AOL users across the country, but two-thirds of the donations were slated for Los Angeles charities.

**PL.'S MTN. FOR A CY PRES DISTRIBUTION**
**CASE NO.: 3:13-CV-00981-JAH-JMA**

5

Further, although the donation to the Federal Judicial Center Foundation "at least conceivably benefit[ed] a national organization," the Foundation "ha[d] no apparent relation to the objectives of the underlying statutes, and it [wa]s not clear how this organization would benefit the plaintiff class." *Id.* The Court held that the district court abused its discretion in approving the *cy pres* distribution to charities that had no relation to the class or to the underlying claims.

Unlike in *Six Mexican Workers* and *Nachshin*, the *cy pres* recipients proposed, here, namely Electronic Frontier Foundation, The Alliance for Media Arts and Culture, Consumer Federation of California, and Public Justice, meet the standard used by the Ninth Circuit in determining the appropriate beneficiaries of unclaimed class action settlement funds.

### C. ELECTRONIC FRONTIER FOUNDATION, NEW MEDIA ARTS, CONSUMER FEDERATION OF CALIFORNIA, AND PUBLIC JUSTICE ARE APPROPRIATE *CY PRES* RECIPIENTS

The Court should approve the four named organizations as appropriate *cy pres* recipients.

#### 1. Nature of lawsuit

This lawsuit was brought to obtain statutory damages for alleged violations of the TCPA, on behalf of Plaintiff and the absent class members whose telephones were sent unsolicited text messages in alleged violation of federal law protecting consumer privacy. *See* Dkt. No. 1. Providing a *cy pres* award to the proposed beneficiaries to foster protection of consumer privacy interests is in line with the nature of the TCPA lawsuit.

#### 2. Objective of the statute (TCPA)

The TCPA is designed to protect the right to privacy of consumers in regards to their telephones. "We agree with Meyer that PRA's violation of the TCPA violated his right to privacy, an interest the TCPA intended to protect." *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 951 (9th Cir. Cal. 2012) (citing

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. Cal. 2009)). "[I]n enacting the TCPA, Congress made specific findings that 'unrestricted telemarketing can be an intrusive invasion of privacy' and are a 'nuisance.'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017).

The proposed beneficiaries are appropriate *cy pres* recipients, and Plaintiff proposes that funds be awarded in equal shares to the four proposed recipients.

### 3.   Interest of silent class members

The interests of the silent class members would be advanced through a *cy pres* award to the proposed beneficiaries, as explained below.

#### i.   *New Media Rights*

New Media Rights sits on the Federal Communications Commission's Consumer Advisory Committee. Exhibit A (Neill Decl., p. 1). Specific examples of work performed by New Media Rights is outlined in the Declaration of Art Neill on pages 2-4. Art Neill is the Executive Director and Founder of the New Media Rights program at California Western School of Law. The work that New Media Rights does with smaller entities and creators has a direct impact on curbing privacy abuses by helping to negate the need for lengthy and expensive litigation and FTC enforcement actions. *Id*. New Media Rights has institutional partners and a proven record in the privacy space.

New Media Rights consistently receives funding from multiple grantors and over 200 individuals each year. (Neill Decl., p. 2). The California Consumer Protection Foundation (CCPF) partnered with New Media Rights on three consumer privacy related grants ranging from $50,000 to $100,000. *Id*. These grants supported their preventative legal services, including one-to-one services, education, and advocacy. These funds will be used to continue and expand consumer privacy related efforts. *Id*.

Recently on February 22, 2017, Judge Gonzalo P. Curiel approved a *cy pres* distribution of unclaimed settlement funds in the amount of approximately $51,000

to New Media Rights in the finally approved TCPA class action settlement entitled, *Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-02999-GPC-KSC (S.D. Cal.). Kazerounian Decl., ¶ 6; Exhibit B thereto.

At the hearing in that matter on January 20, 2017, Judge Curiel stated:

> I have reviewed the request to designate New Media Rights as the appropriate cy pres recipient. I agree with the parties with respect to their analysis as to a proper cy pres recipient that, given the nature of the lawsuit, the consumer privacy interests that are at play, the business or the rights that are protected by New Media Rights, that there's a proper nexus. There's a good fit. And so that, ultimately, by this cy pres award, we would be indirectly benefiting the members of the class.

[Exhibit C to Kazerounian Decl. (p. 5, lns. 5-13 of hearing transcript)].

### ii.   *Consumer Federation of California*

The Consumer Federation of California ("CFC") is a non-profit consumer advocacy organization that works to improve state and federal consumer protection laws. Exhibit D (Holober Decl., p. 1). Privacy is at the center of CFC's focus. *Id*. CFC has submitted testimony in support of numerous pending pieces of legislation intended to strengthen privacy rights and consumer protection. *Id*. In the matter of *Universal Serv. Fund Tel. Billing Practices Litig*., No. 02-MD-1468-JWL, 2013 U.S. Dist. LEXIS 80204, at *13 (D. Kan. June 7, 2013), the court approved CFC as one of the *cy pres* recipients and noted that CFC is "a non-profit advocacy organization based in Sacramento with over 50 years of experience campaigning for consumer protection laws on behalf of California consumers."

In 2016, CFC launched Privacy Revolt, an online campaign to build grassroots support for stronger national consumer privacy protections, through which CFC submitted comments to the Federal Communications Commission

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

("FCC"). *Id.*[2] CFC has led an array of legislative efforts and has helped to enact a number of privacy laws, including the nation's strongest financial privacy law (Senate Bill 1 – Speier; Chapter 791, Statutes of 2003). (Holober Decl., at p. 1).

### iii. *Electronic Frontier Foundation*

"[T]he Electronic Frontier Foundation, is a non-profit organization that works to defend civil liberties in the digital world . . ." *Zepeda v. Paypal, Inc.*, No. C 10-2500 SBA, 2015 U.S. Dist. LEXIS 150577, at *10 (N.D. Cal. Nov. 5, 2015) [Ex. T]; *LaGarde v. Support.com, Inc.*, 2013 U.S. Dist. LEXIS 67875, 2013 WL 1994703, at *4 (N.D. Cal. May 13, 2013) ("EFF focuses on protecting technology consumers and advanc[ing] their digital rights [and] intends to use the cy pres funds to continue the important work of building a better digital future for consumers"); *see also* Exhibit E (EFF Decl., p. 1); Kazerounian Decl., ¶ 10. EFF has worked to protect user privacy on consumer devices. EFF Decl., p. 1.

The EFF has been approved as the *cy pres* recipient in other consumer class action cases involving violations of the TCPA. EFF Decl., p. 3 (listing 7 cases); *see also Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 234 (N.D. Ill. 2016) (approved as *cy pres* recipient in TCPA action); *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818 NC, 2016 U.S. Dist. LEXIS 15822, at *7 (N.D. Cal. Feb. 8, 2016) (one of the *cy pres* recipients in unlawful call recording case); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 946 n.7 (N.D. Cal. 2013) (one of the *cy pres* recipients in a consumer privacy action).

### iv. *Public Justice Foundation*

Public Justice Foundation litigates high impact lawsuits involving issues central to the enforcement of the TCPA, in an effort to hold companies accountable, win compensation for victims, and build a body of law which better

---

[2] The CFC joined in a letter to the FCC dated January 15, 2015 seeking to maintain the strong protections of the TCPA. *See* Exhibit F to Kazerounian Decl.

protects consumer rights in California and nationwide. Exhibit G (Bland Decl., at ¶ 6). Public Justice also advocates for regulatory and legislative initiatives that would better protect consumers, and provides assistance and information on a pro bono basis to individuals, and attorneys who represent individuals and classes, who have been harassed by violators of the TCPA. *Id*. at ¶¶ 7-8.

Public Justice Foundation is the proud recipient of more than three dozen *cy pres* awards granted by various federal and state courts, of which funds were thoughtfully used to further consumer protection advocacy and education efforts nationwide; and Public Justice will use any *cy pres* funds from this litigation to do the same. *Id*. at ¶¶ 9-10.

Therefore, Plaintiff requests the Court grant Plaintiff's Motion and find that New Media Rights, Consumer Federation of California, Electronic Frontier Foundation, and Public Justice are appropriate *cy pres* recipients.

### IV. CONCLUSION

In sum, Plaintiff respectfully requests that this Court approve a *cy pres* distribution of the unclaimed settlement funds. If the Court orders a *cy pres* distribution, Plaintiff respectfully requests that the Court name New Media Rights, Consumer Federation of California, Electronic Frontier Foundation, and Public Justice Foundation as the four recipients who shall share equally in the award.

Date: April 26, 2017                                   **KAZEROUNI LAW GROUP, APC**

                                                        By:  /s/ Abbas Kazerounian
                                                            ABBAS KAZEROUNIAN
                                                            ATTORNEYS FOR PLAINTIFF

**PL.'S MTN. FOR A CY PRES DISTRIBUTION**       10
**CASE NO.: 3:13-CV-00981-JAH-JMA**