# EXHIBIT E

Case 3:13-cv-00981-JAH-JMA    Document 65-7    Filed 04/26/17    PageID.1066    Page 1 of 4

# ELECTRONIC FRONTIER FOUNDATION (EFF) DECLARATION ON CONSUMERS' RIGHTS WORK

Digital devices have transformed our society and empowered millions of people as speakers, citizens, creators, and consumers. Founded in 1990, the Electronic Frontier Foundation (EFF) has championed the public interest in every critical arena affecting civil liberties and technology. EFF began fighting for users' rights long before most people understood how pervasively digital communications would impact their everyday lives and basic rights. We have since achieved significant victories for the public interest using the unique expertise of leading technologists, activists, and attorneys. An award of cy pres funds would support EFF's ability to defend consumers' rights to privacy, free speech, and innovation.

## A LONG HISTORY OF PROTECTING THE PUBLIC INTEREST

EFF has worked for the past 27 years to protect consumers' rights and privacy on consumer devices. Here are a few highlights of this work. To learn more about decades of EFF's cases and projects, please check out our website at https://www.eff.org.

**EFF zeroes in on zero-rating.**
EFF began investigating accusations that T-Mobile's new Binge On zero-rating program deceptively throttled its customers' supposedly unlimited video streams. Staff researchers discovered that instead of optimizing video as they claimed on their websites and Open Internet disclosures, T-Mobile was instead throttling all video for Binge On subscribers.EFF's report on the issue immediately garnered media attention, and eventually led T-Mobile CEO John Legere to publicly curse at EFF in a self-recorded rant via Twitter. Researchers at Northeastern University and the University of Southern California later published a paper confirming EFF's findings. T-Mobile has subsequently made it easier to disable and re-enable Binge On, allowed edge providers to opt out, and provided a more accurate explanation of how Binge On works. EFF continues to sound the alarm on the risks programs like Binge On pose to an open Internet and consumer rights.

**EFF evaluates user privacy on consumer devices.**
In December 2015, EFF launched a campaign to raise awareness about the risks to privacy when companies collect students' data, and has fought for their rights and data security on multiple fronts. EFF published a nationwide survey to learn how parents, students, teachers, and administrators experienced student privacy issues; we provided answers to questions about the legal and technological landscape of educational technology; we filed a complaint with the Federal Trade Commission regarding the data collection practices of Google's G Suite for Education; and we created a wealth of resources for parents, students, and school staff. EFF reported on the survey results in *Spying on Students: School-Issued Devices and Student Privacy*, a whitepaper released April 2017.

**EXHIBIT E 01**

**EFF fights for your right to privacy at the border.**
Our lives are minutely documented on the phones and laptops we carry, and in the cloud, with records of private conversations, family photos, medical documents, banking information, information about what websites we visit, and much more. In March 2017, EFF filed a brief at the U.S. Court of Appeals for the Fourth Circuit in the border search case *U.S. v. Kolsuz* arguing that border agents must obtain a warrant to search travelers' devices. The monumental increase in device searches also led EFF to launch a major update in March 2017 to our comprehensive whitepaper on digital privacy rights when traveling to and from the U.S.

**EFF has your back.**
Our annual Who Has Your Back? report provides both an avenue for transparency and a method of encouraging companies to protect their users' privacy. The sixth US edition, released May 2016, focuses on the "sharing economy," and continues the trend of raising the bar for industry best practices and providing companies with incentive to follow them. By providing users with detailed information about companies' policies on disclosing government demands protecting user data, we allow consumers to make informed decisions about the companies they trust with their information while encouraging them to hold tech companies to a high standard.

**EFF trains consumers to secure their devices.**
Modern technology has given those in power new abilities to eavesdrop and collect data on innocent people. Surveillance Self-Defense is EFF's flagship guide to secure technology and developing careful practices. SSD provides in-depth, step-by-step guides to threat modeling, understanding different types of encryption, choosing tools that are right for each user, and understanding these tools' limitations. Updated regularly and available in 11 languages, SSD serves as a repository of EFF's knowledge about both surveillance law and surveillance and encryption technology, which we use to conduct security trainings for activists, journalists, and ordinary technology users.

**EFF protects consumers' Fourth Amendment rights.**
EFF continues to watch the courts for opportunities to ensure that the Fourth Amendment is properly applied in the digital age. Over the past four years, we have filed amicus briefs in two U.S. Supreme Court cases that have taken steps in the right direction. In *Riley v. California*, EFF and the Center for Democracy and Technology (CDT) argued that once a cell phone has been seized, the police need a search warrant to search the data on the phone. The Supreme Court agreed, unanimously ruling in June 2014 that the search incident to arrest exception does not extend to a cell phone, and that police need to get a search warrant in order to search an arrestee's phone after arrest. This case builds on an earlier decision that EFF participated in, *U.S. v. Jones*, which, for the first time, threw into question the third party doctrine.

**EFF fights for locational privacy.**
Devices like cell phones can create extensive records of your actions based simply on your changing location. EFF is providing technical, legal, and amicus support in various

**EXHIBIT E 02**

cases arising from government surveillance technologies. We assisted a defendant in a cell-site simulator (aka Stingray) case, filing an amicus brief in *State of Maryland v. Andrews*; the court held unanimously in 2016 that the Baltimore Police Department's secretive behavior and failure to get a search warrant before using a Stingray violated the defendant's constitutional rights. *Andrews* is the first appellate decision that we know of where a court has ever closely analyzed police use of a Stingray. We also continue to look for and support cases challenging the third party doctrine as well as the metadata/content distinction.

**EFF helps consumers "free their phones."**
The pervasive use of dangerous digital rights management (DRM) technologies that threaten users' security and privacy, distort markets, confiscate public rights, and undermine innovation. For many years, EFF has been a vocal advocate for the freedom to fully control one's devices. EFF requested and won Digital Millennium Copyright Act (DMCA) exemptions for cell phone "jailbreaking" – liberating iPhones and other handsets to run applications from sources other than those approved by the phone maker. Hundreds of thousands of iPhone owners have "jailbroken" their iPhones in order to use applications obtained from sources other than Apple's own iTunes App Store. We also won exemptions for unlocking cell phones so that the handsets can be used with any telecommunications carrier.

## Previous TCPA Cases Designating Cy Pres Awards to EFF

Chapa v. TruGreen
Rose v. Bank of America
Stanley Nader, v. Capital One Financial Corporation
Martin v. Dun & Bradstreet, Inc.
Brandon Wheelok v. Hyundai
Byanooni v. Merrill Lynch
Francisco Marenco v. Visa Inc.

## CONCLUSION

EFF is committed to privacy, free speech, and innovation, and has worked consistently for nearly three decades to secure these rights for consumers. Through our website, press work, activism campaigns, technical tools, and litigation, EFF's work has enabled consumers to educate themselves, take back their privacy, and use products the way they choose. An award of cy pres settlement funds will enable EFF to continue this important work.

**EXHIBIT E 03**